IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU CENTRAL, INC. d/b/a IOU
Financial, Inc.,

      Plaintiff,

v.

PEZZANO CONTRACTING AND
DEVELOPMENT, LLC; VINCENT
A. PEZZANO; ARLENE R.
PEZZANO; VINCENT R.
PEZZANO; and SARA B.
PEZZANO,

      Defendants.

CIVIL ACTION FILE

NO. 1:19-cv-4882-TCB

## **O R D E R**

On August 17, 2015, Defendant Vincent R. Pezzano executed a

merchant agreement and a security agreement in favor of Superior

Funding on behalf of Defendant Pezzano Contracting and Development,

LLC. In exchange, Superior Funding loaned Pezzano Contracting $35,000.[1]

On October 27, Vincent R. executed a promissory note in favor of Plaintiff IOU Central, Inc. in exchange for a $106,600 loan. He also executed a guaranty of the note. The loan was used to satisfy $29,346.81 of the Superior Funding loan.

On January 6, 2016, Defendants obtained $34,510 from Superior Funding under its still open loan. IOU avers that it would not have approved the October loan if Defendants had disclosed their intent to obtain this loan from Superior Funding.

On April 18, Vincent R. submitted a second loan application to IOU and later executed a second promissory note and guaranty in exchange for a $107,800 loan ("2016 Loan"). That loan was used to satisfy $17,513 of the Superior Funding loan and $65,221 of the first IOU loan.

---

[1] For purposes of this motion, the factual allegations in the complaint are accepted as true.

Vincent R. and Pezzano Contracting ultimately defaulted on the 2016 Loan. IOU also asserts that they closed their FDIC-insured account to block pre-approved ACH payments on the 2016 Loan.

IOU pleads that all Defendants jointly received and benefitted from the first and second loan by using funds from the loans as follows: (1) to satisfy a mortgage to Vincent R. and Sara; (2) to settle a lawsuit against Pezzano Contracting; and (3) to pay their business and/or individual debts. IOU claims that Defendants are jointly and severally liable for the loan because they "[o]perate as and constitute a joint racketing [sic] or other enterprise," [17] ¶ 57(a), and acted for agents for each other in applying for the loans, executing the instruments, and obtaining the funds. IOU also asserts that its "[i]nstruments attached to all property, assets, and/or proceeds of [Defendant], including that owned by [Pezzano Contracting] and by [Vincent A., Arlene, Vincent R, and Sara] . . . ." [17] ¶ 61.

On October 30, 2019, IOU filed a complaint, which it subsequently amended, in this Court. It seeks (1) equitable subrogation, (2) declaratory relief that Defendants are an enterprise and, inter alia,

3

jointly liable for the loan, (3) an equitable lien on Defendants' properties, and (4) a constructive trust on the property, business assets, or proceeds of Defendants. IOU also asserts claims for (5) breach of instruments, (6) quantum meruit/unjust enrichment, (7) federal RICO, (8) Georgia RICO, and (9) attorney's fees.

Now before the Court are the following motions: (1) Defendants' second [22] motion to dismiss; (2) Plaintiff's motion [24] for acceptance of response to motion to dismiss as timely filed; (3) Defendants' motion [26] for sanctions; (4) Plaintiff's amended motion [31] for sanctions; (5) Plaintiff's motion [33] for extension of time; and (6) Plaintiff's motion [35] to strike joint preliminary report and discovery plan.

## II.  Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:

4

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also*

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual

allegations in the complaint are "enough to raise a right to relief above

the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations

omitted). "[A] formulaic recitation of the elements of a cause of action

will not do." *Id.* at 555 (citation omitted). Although all well-pleaded

facts must be accepted as true and construed in the light most favorable

to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011),

the Court need not accept as true the plaintiff's legal conclusions,

including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

 In addition to these generally applicable pleading standards, Rule

9(b) requires that a party alleging fraud or mistake "must state with

particularity the circumstances constituting fraud or mistake." This

rule serves the dual purpose of ensuring that a complaint "alert[s]

defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

To satisfy Rule 9(b), a complaint must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997)) (further explaining that Rule 9(b) "requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud").

Significantly, however, "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading,'" and thus that rule must be read in conjunction with the requirements of Rule 8. *Ziemba*, 256 F.3d at 1202 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). And "when 'specific factual

6

information [about the fraud] is peculiarly within the defendant's knowledge or control,'" the particularity requirement of Rule 9(b) "may be applied less stringently . . . ." *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (per curiam) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga.), *reconsideration granted*, 755 F. Supp. 1055, 1058–59 (S.D. Ga. 1990)).

## III. Discussion

### A. Motion to Dismiss

As a threshold matter, in response to Defendants' motion to dismiss, IOU includes a "corrected statement of facts." In this statement, which is styled in paragraph format like a pleading, IOU introduces twenty-six new paragraphs. It is unclear whether IOU includes these paragraphs to supplement its complaint or respond to factual allegations in Defendants' motion to dismiss. To the extent they are responses, the Court will consider them. However, the Court does not assume these factual statements to be additions to the complaint, as

the proper means to make additions would have been for IOU to seek leave to file a second amended complaint.[2]

### 1.    *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine bars all of IOU's claims.

"The *Rooker-Feldman* doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923), and *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 476–82 (1983)). It provides that "federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Id.* (quoting *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)).

The *Rooker-Feldman* doctrine "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Siegel*, 234

---

[2] IOU's motion [23] for acceptance of response as timely filed will be granted.

F.3d at 1172 (quoting *Feldman*, 460 U.S. at 482 n.16, and *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997)). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* at 1172 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Although *Rooker-Feldman* "is broad enough to bar all federal claims which were, or should have been, central to the state court decision," *Goodman*, 259 F.3d at 1333, the Supreme Court has since limited the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005)).

Thus, "[a] claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine . . . ." *May v. Morgan Cty.*, 878 F.3d 1001, 1005 (11th Cir. 2017). If the federal litigant is not seeking

9

reversal of the state court decision itself, on the other hand, then the doctrine does not apply. *See Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86(11th Cir. 2018) ("Consistent with the directions of the Supreme Court, we now apply *Rooker-Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments.") (citing *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009)).

Some factual background is necessary to understand the parties' arguments regarding *Rooker-Feldman*'s applicability. In June 2017, IOU filed a lawsuit in Florida state court seeking repayment of the 2016 Loan and asserting claims for, inter alia, breach of contract and unjust enrichment. The Florida court held a bench trial, during which questions arose as to where IOU should have filed the lawsuit and whether Florida or Georgia state law applied. Following that bench trial, the court entered a final judgment: "The Court finds that the instant action should have been brought in the State of Georgia." [22-7] at 1. However, the judgment went on, "The Court finds in favor of

Defendants [Pezzano Contracting and Vincent R. Pezzano] who are the prevailing parties in the instant action. Plaintiff . . . shall take nothing from its action against the Defendants . . . ." *Id.*

IOU then brought an action in the Georgia state court again seeking repayment of the 2016 Loan. Defendants filed a motion for summary judgment asserting that res judicata applied because the case had already been litigated in Florida. IOU responded that the Florida court had refused to exercise subject-matter jurisdiction, and therefore, res judicata did not apply. The Georgia court denied the motion based on its finding that the judgment by the Florida court was not on the merits of IOU's claims.

Defendants then returned to Florida and asked the judge to clarify whether the court had ruled on the merits. The Florida court then entered an amended final judgment stating that "the Court adjudicated the merits of the dispute based on a business relationship between the parties." [22-13] at 1.  The judgment affirmed that the action should have been brought in Georgia.

11

Defendants came back to Georgia and again sought summary judgment that IOU's claims were barred by res judicata. Again, the Georgia court determined that the Florida court's judgment was not a ruling on the merits.

IOU then brought the present action. In this case, the central question is what the final judgment of IOU's action in Florida state court entailed. Defendants argue that the Florida state court action was an adjudication on the merits of this case. IOU responds that the *Rooker-Feldman* doctrine does not apply because the Florida decision was not a final judgment on the merits.

Admittedly, it is not clear whether there was a final judgment such that the *Rooker-Feldman* doctrine applies. On one hand, a bench trial was held in the Florida action, but the Florida court stated both that the bench trial was on the merits and that this action should have been brought in Georgia. On the other hand, the Georgia court held that the Florida action was not a final adjudication on the merits.

12

Fortunately, the Court need not decide whether the Florida action was a final adjudication on the merits, because this case is due to be dismissed for improper claim-splitting, as discussed below.

### 2.   Res Judicata

Defendants also argue that res judicata bars this action. However, for res judicata to apply, a final judgment *by a court of competent jurisdiction* involving the same causes of action must have been entered. Because it is not evident that the Florida court was one of competent jurisdiction (since it stated that the case should have been brought in Georgia), the Court declines to dismiss this action based on res judicata.

### 3.   Claim-Splitting

Defendants next argue that IOU has engaged in impermissible claim-splitting and that their claims in the instant lawsuit should be dismissed. IOU responds only that res judicata is inapplicable to this case because no final decisions were made in the Florida case.

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste

'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'

*Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). Unlike res judicata, the test for claim-splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.* (quoting *Katz*, 655 F.3d at 1218). A later-filed lawsuit may be dismissed for claim-splitting if it "1) involves the same parties and their privies; and 2) arises out of the same transaction or series of transactions as the first suit." *Greene v. H&R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010).

Here, both elements are satisfied. Though the present action also adds Vincent A., Arlene, and Sara, those parties are in privity with Vincent R. and Pezzano Contracting. Because the doctrine of claim-splitting arises from res judicata, the Court applies the privity analysis pertinent to res judicata. "Privity is defined as 'a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (quoting *Hart v.*

14

*Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986)). It exists where the nonparty's interests were represented by the party in the original suit.

Here, Vincent A., Arlene, and Sara could be liable for the 2016 Loan only if Vincent R. and Pezzano Contracting are held liable. Vincent R. and Pezzano Contracting's interests are so closely aligned with those of Vincent A., Arlene, and Sara that they were virtual party representatives. Moreover, IOU has essentially argued privity by averring that Defendants are jointly and severally liable for the loan and act as agents for each other. Therefore, Defendants are in privity, and the first element of claim-splitting is satisfied.

The second inquiry is whether the present lawsuit arises out of the same transaction as the Georgia lawsuit. It does. Both actions stem from the 2016 Loan made by IOU to Vincent R. and Pezzano Contracting.

IOU cites *Foster v. RSC Equipment Rental, Inc.*, No. 1:09-cv-479-TCB, 2009 WL 4840649 (N.D. Ga. Dec. 1, 2009), in its response because "the Court denied a similar motion to dismiss a counterclaim on the

15

grounds of claim-splitting." [23] at 17. *Foster* is not on point. In that
case, the procedural history was far more complex—the plaintiff filed an
action in this Court and the defendant asserted certain counterclaims,
the defendant filed another action in another court, the defendant's case
was then transferred to this Court, and the plaintiff moved to dismiss
the defendant's counterclaims based on claim-splitting. Moreover, the
defendant opted to dismiss the counterclaims in this Court, and the
only reason the counterclaims remained at issue was because the
plaintiff moved to transfer the defendant's case.[3] Here, IOU has filed
three separate actions, all based on the 2016 Loan and Defendants'
default thereunder. These subsequent filings epitomize a waste of
judicial resources.

That the present action alleges additional causes of action does
not cure IOU's impermissible claim-splitting. Even though IOU raises
new causes of action in the present action, including RICO, the "claims
arise out of the same transactional nucleus of facts" as the claim

---

[3] Moreover, *Foster* was decided before the Eleventh Circuit first analyzed the
applicability of claim-splitting.

asserted in the Georgia state court action. *See Vanover*, 857 F.3d at 843.

Therefore, the addition of causes of action does not prevent the

application of the claim-splitting doctrine. "To rule otherwise would

defeat the objective of the claim-splitting doctrine to promote judicial

economy and shield parties from vexatious and duplicative litigation

while empowering the district court to manage its docket." *Id.*

Accordingly, this case will be dismissed.[4]

## B.    Motion for Sanctions

IOU moves for sanctions against Defendants and their counsel for

their purported misstatements of law and fact. Specifically, IOU seeks

sanctions against Defendants for relying on the outcome of the Florida

case and ignoring the outcomes thus far in the Georgia case.

While Defendants' motion to dismiss did not discuss the outcomes

of its motions for summary judgment in the Georgia case, the Court

does not find that the omission warrants sanctions. IOU also asks this

Court to sanction Defendants for failure to abide by page limits imposed

---

[4] IOU argues that Defendants did not move to dismiss claims one through seven. That argument is simply incorrect, because Defendants moved to dismiss those claims under the doctrines of *Rooker-Feldman*, res judicata, and claim-splitting.

by this Court's local rules, but IOU has also failed to abide by this Court's local rules. Moreover, most of IOU's motion seeks to sanction Defendants for arguments made in their motion to dismiss, which this Court has found to be meritorious. Accordingly, the Court finds that sanctions are not warranted, and IOU's motion [31] will be denied.[5]

Also before the Court is Defendants' motion [26] for sanctions. Defendants seek sanctions against IOU for filing this lawsuit and responsive briefing. IOU's conduct is not so egregious as to warrant monetary sanctions.

## III. Conclusion

For the foregoing reasons, Defendants' motion [22] to dismiss is granted. IOU's motion [24] for acceptance of response to motion to dismiss as timely is granted. Defendants' motion [26] for sanctions is denied. IOU's amended motion [31] for sanctions, motion [33] for extension of time, and motion [35] to strike joint preliminary report and

---

[5] The incorporated motions to strike and for Clerk's entry of default will similarly be denied.

discovery plan are denied as moot. This case is dismissed, and the Clerk

is directed to close this case.

IT IS SO ORDERED this 28th day of September, 2020.

_____
Timothy C. Batten, Sr.
United States District Judge